O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MANUEL PEREZ,<br><br>　　　　　　　Defendant. | Case No.: 2:22-cr-00333-MEMF<br><br>**ORDER GRANTING IN PART MANUEL PEREZ'S MOTION FOR MODIFICATION OF PRETRIAL RELEASE CONDITIONS [123]** |

　　　Before the Court is a Motion for Modification of Pretrial Release Conditions filed by Defendant Manuel Perez ("Perez").[1] ECF No. 123. For the reasons set forth below, the Motion is GRANTED in part.

---

[1] Although the Motion is entitled "Motion for Modification of Pretrial Release Conditions," in fact the Motion concerns the conditions upon which Perez has been released post-trial, after a guilty verdict.

## I. Procedural Background

In July 2022, Perez was charged with one count of Abusive Sexual Contact in violation of 18 U.S.C. §§ 2244(b), 7(8), and one count of Simple Assault Of An Individual Under The Age Of Sixteen in violation of 18 U.S.C. §§ 113(a)(5), 7(8). Upon being arraigned, he was released on bond with a number of conditions, including that he "not associate or have verbal, written, telephonic, electronic, or any other communication with any person who is less than the age of 18 except in the presence of a parent or legal guardian of the minor." ECF No. 21 at page 3. In addition, the following conditions were imposed: (1) that Perez reside with his parents (instead of with his wife and minor daughter and step-daughter); and (2) that physical contact with his minor daughter and step-daughter occur "only in the presence of a third-party approved by Pretrial Services." ECF No. 21 at 4.

A jury convicted Perez of both counts in November 2022. ECF No. 78. After the jury returned its verdict, the Government did not oppose Perez remaining out on bond pending sentencing. Perez's counsel requested a change of the bond conditions at the time, and the Court declined to do so, advising counsel that they should meet and confer and present a stipulated request or noticed motion. *See* ECF No. 73. Sentencing was scheduled for February 2023/ ECF No. 83.

Later in November 2022, the parties stipulated to request that Perez be permitted to visit his home, but not be alone with his minor daughter or step-daughter or have physical contact with them without his wife. ECF No. 84. The Court granted the request, modifying the conditions as follows:[2]

1. Perez will be permitted to visit his home only between the hours of 6:00 A.M. and 10:00 P.M., every day, and only with the permission of his wife and at her sole discretion with respect to the time and duration of his visits.
2. During his visits to the home, Perez may only be present in the same room with his minor children while his wife is physically present in the same room.
3. During his visits to the home, Perez may only have physical contact with his minor children while his wife is physically present in the same room.

ECF No. 85.

---

[2] The Court used slightly different language than the parties, being more explicit about the nature of the restrictions.

In March 2023, the Court granted Perez's request that his retained counsel be relieved and replaced by a court-appointed attorney. ECF No. 94. New counsel has brought a motion for a new trial on various grounds, including defects in the jury instructions, new evidence regarding diminished capacity, and ineffective assistance of counsel. *See* ECF No. 116.

On November 13, 2023, Perez filed an Ex Parte Application for Order Modifying Pretrial Release Conditions, asserting that the conditions preventing him from living at home and being alone with his minor children were excessive, substantively unreasonable, and violate his right to familial association. ECF No. 121. The Court denied the Ex Parte Application without prejudice, finding that Perez had failed to show good cause for the requested modifications. ECF No. 122. In denying the Ex Parte Application, the Court invited Perez to file a noticed motion to allow the parties to properly present—and the Court to thoroughly consider—the parties' respective positions on what the governing law is and how it applies to Perez's requested modifications. *Id.*

Perez brought his Motion on December 5, 2023. ECF No. 123 ("Motion"). Pursuant to the Court's expedited briefing schedule, the Government filed its Opposition on December 11, 2023, ECF No. 125 ("Opposition"), and Perez filed a Reply on December 14, 2023, ECF No. 126 ("Reply"). The Court held a hearing on the Motion on January 4, 2023.

## II. Facts Presented at Trial[3]

Perez's six-year-old daughter is severely autistic and largely non-verbal. His daughter was in his sole care for the duration of the cruise; there were several other members of Perez's extended family on the cruise ship. On the day in question, Perez, his daughter, the two victims (who are sisters), their father, their step-mother, and another unrelated couple were in the jacuzzi of the cruise ship. Perez was drinking heavily while in the jacuzzi and asked the victims a number of questions related to their age and drinking. Perez asked the victims at various points to babysit his daughter and touched the victims on the buttocks and/or thigh under the water. This touching was intentional and unwanted and caused the victims distress. When the younger victim got out of the pool to get

---

[3] These facts represent a summary of the testimony presented at trial. At trial, Perez testified that he did not recall the events that occurred in the jacuzzi, but did not present alternative version of these events.

away from Perez and tell her father what had happened, Perez mouthed to her "Don't tell," which was observed by the unrelated woman in the jacuzzi.

After Perez touched the older victim, she punched him in the face and he immediately got out of the pool and took his daughter with him. When security approached him to determine what had happened, Perez fled down a flight of stairs with his daughter in her stroller.

### III. Applicable Law

A criminal defendant who has been convicted has no constitutional right to be released prior to sentencing. His ability to be released is therefore governed by the Bail Reform Act, and the Bail Reform Act sets forth different standards for release of defendants pending trial and release of defendants pending sentence. *Compare* 18 U.S.C. § 3142 *with* 18 U.S.C. § 3143; *see* 27 Moore's Federal Practice -- Criminal Procedure § 646.13 (2023) ("Since the release of a criminal defendant after conviction may severely undermine the deterrent effect of criminal punishment, especially in situations where an appeal may take months or even years, the Bail Reform Act dictates separate treatment for release pending the imposition of a sentence, release pending appeal by the defendant, and release pending appeal by the government."). In particular, whereas the *pretrial* presumption is that a defendant will be *released* pending trial, the Bail Reform Act establishes a presumption in favor of *detention* for a *convicted* defendant who has been convicted of a crime of violence.[4] See 18 U.S.C. § 3143(a)(2). Under the statute, such a defendant may be ordered released, "under appropriate conditions" where the conditions set forth in Sections 3143 and 3145 have been met, including that there are "exceptional reasons why such person's detention would not be appropriate."

In *United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012), the defendant appealed the imposition of a condition of supervised release which barred the defendant from residing with or

---

[4] The parties do not appear to dispute that Section 3143(a)(2) applies to Perez. Section 3143 sets forth a special presumption for defendants convicted of offenses described in Section 3142(f)(1)(A). Section 3142(f)(1)(A), in turn, lists a number of offenses including "a crime of violence." Section 3156(a)(4)(C) defines a "crime of violence" to include "any felony under chapter . . . 109A," and one of Perez's crimes of conviction, Abusive Sexual Conduct in violation of Section 2244(b) is a felony under Chapter 109A. *See* 18 U.S.C. § 2244.

being in the company of his own daughters. The Ninth Circuit considered the following questions: (1) whether the district court committed procedural error in imposing the condition; and (2) whether the condition was substantively reasonable. *Id.* First, the Court found that a ban on associating with one's own children implicates the fundamental liberty interest in having contact with one's children. *Id.* at 1091. As a result, the Ninth Circuit held that the district court was required to follow an enhanced procedural requirement before imposing the ban on contact with the defendant's children as a condition of supervised release. The court held that it was not the case that any interference with the parent-child relationship was impermissible, but "the *sentencing* court, at the time it imposes the restrictive condition on the exercise of a particularly significant liberty interest, must itself point to the evidence in the record on which it relies and explain how on the basis of that evidence the particular restriction is justified." *Id.* at 1092 (emphasis added). The Court found that the district court did not comply with those enhanced procedural requirements.

The Court then turned to the question of whether the ban was substantively unreasonable: "A *supervised release condition* is substantively unreasonable if it is not reasonably related to the goal[s] of deterrence, protection of the public, or rehabilitation of the offender, or if it infringes more on the offender's liberty than is reasonably necessary to accomplish these statutory goals." *Id.* at 1090 (emphasis added) (internal quotations and citations omitted). With respect to this question, the Court found that it was substantively unreasonable, applying the test that applies to supervised release conditions: "Nothing in the record would support a finding that these restrictions on his fundamental liberties involve no greater deprivation of liberty than is reasonably necessary to accomplish the goals of deterrence, protection of the public, or rehabilitation." *Id.* at 1096–97. According to the Court, the reasons relied upon by the district court were largely unfounded and furthermore, it could not "justify the imposition of conditions of supervised release that so drastically infringe on the fundamental right to familial association on the basis of a record devoid of any suggestion that Wolf Child poses a sexual risk to his daughters or to his fiancée (or to her daughters, of whom he is the father)." *Id.* at 1097.

/ / /

/ / /

## IV. Discussion

Perez requests modification of his bond conditions on the ground that they are procedurally and substantively unreasonable, relying heavily on the Ninth Circuit decision in *Wolf Child*. According to Perez, there is nothing in the record which supports *any* restriction on Perez's liberty interest in parenting his children. Motion at 11. Perez points to the fact that the relationship he has with his children is one of "love, care, and daily support" and that there is no evidence of abuse or mistreatment of them. Motion at 12.

### A. Perez stretches *Wolf Child* Too Far.

As a preliminary matter, it is not clear to this Court that *Wolf Child* controls the question before this Court. Perez is trying to force this case into the facts and posture of *Wolf Child*, but it simply does not fit.[5] As discussed above, *Wolf Child* considered a supervised release condition, not a condition of release pre-sentencing. Both with respect to the question of whether the condition was procedurally infirm as well as whether it was substantively unreasonable, the court pointed to the standards that apply to a court in *imposing sentence*. There is no indication that either the enhanced procedural requirement or the substantive standard that was applied would or should apply in the *pre-sentencing* context. Not only did the court not speak to that issue, but it is beyond dispute that a defendant's liberty interests are greatly reduced pre-sentencing as opposed to after the service of his sentence.[6]

Perez in essence seeks to have greater procedural rights than he would have at sentencing. Even though incarceration is likely the most severe deprivation of the right to familial association, neither *Wolf Child* nor any other case of which the Court is aware requires enhanced procedural

---

[5] Furthermore, Perez himself proposed the restriction ultimately imposed by the Court. At the hearing, his counsel argued that it violated his Constitutional rights and limits on contact with Perez's children should never have been imposed at any stage of the case.

[6] In his Reply, Perez emphasizes that Perez has already overcome the presumption in the Bail Reform Act and therefore the Government's discussion of the Act's standards is a distraction. The Court finds otherwise. Perez was released, per the statute, pursuant to certain conditions. It is those conditions that he challenges now. Any determination that the Court made that Perez was safe to be released cannot be divorced from the conditions upon which he was released—including the conditions regarding his contact with his daughter and step-daughter.

protections or holds that incarceration is unreasonable if it does not meet the *Wolf Child* test. The defense acknowledged at the hearing in this matter that if the Court determined that Perez should be detained or incarcerated, it would not be required to comply with these enhanced procedural requirements. And as the Government pointed out at the hearing in this matter, in the sentencing context, the Court is required to apply the "least restrictive conditions," but the "exceptional reasons" category of release under the Bail Reform Act only requires "*appropriate* conditions" not the "*least restrictive* conditions." Perez himself proposed the restriction ultimately imposed by the Court.

### B. Even if *Wolf Child* Does Apply, the Enhanced Procedural Requirements Are Met In This Case.

Even if this Court is required to comply with the enhanced procedural requirements set forth in *Wolf Child*, there is substantial support for doing so: Perez committed two criminal offenses—including one felony sexual offense—in the presence of his daughter while she was in his sole care. Perez's conviction establishes that he committed these offenses, and the undisputed evidence at trial establishes that his conduct occurred in the presence of his daughter while she was in his sole care. In light of this ample evidence in the record, the Court is justified in prohibiting Perez from having his daughter (or his step-daughter) in his sole care.[7]

The record is replete with other evidence of the risk posed by Perez to his daughter and step-daughter when they are left in his sole care:

(1) Perez's daughter is severely autistic and largely nonverbal;
(2) Perez's step-daughter is a teenager close in age to the victims;
(3) Perez committed a sexual assault on a teenager in the presence of his daughter;
(4) Separately, Perez committed an assault on a minor in the presence of his daughter;
(5) Perez cautioned the minor not to tell her parents what he had done;

---

[7] The Court wishes to make clear that even if *Wolf Child* is controlling, it does not stand for the proposition that a court may only restrict a defendant's access to his children if there is evidence of specific allegations of abuse or mistreatment. Not only does *Wolf Child* not so hold, but such a holding would be contrary to common knowledge that abuse of children—and particularly sexual abuse—is often undetected and unreported. Such a requirement would be particularly nonsensical in a case like this one where one of the children at issue was nonverbal and the evidence indicates that most of the time she spent with Perez was time alone with him.

(6) Perez admitted to drinking to excess in the presence of his daughter while supervising her in a jacuzzi – which is a dangerous situation for any child, but particularly one with his daughter's limitations—at the very least, there was the danger of drowning and sexual assault;[8]

(7) Upon being confronted about the assault, Perez fled the scene with his daughter down a set of steps in a dangerous manner;

(8) Perez managed to commit these assaults while his victims were in the care of their father and step-mother;

(9) One fair inference from the evidence presented at trial was that Perez used his own daughter to get physically close to his two victims and to lull his victims and their parents into a false sense of security; and

(10) Perez is a sixteen-year probation officer —who presumably has considerable training and experience monitoring similar conditions for sex offenders.[9] Yet he brought his children with him as he violated a clear condition of his release, claiming that he did not understand that the condition that he not be "within 100 feet of any . . . park . . . primarily used by children under the age of 18" applied to a park with statutes of prehistoric animals, frequented by school-aged children, where he went *with his daughter and step-daughter*.

This evidence shows that Perez poses a risk of harm to his own daughter (and step-daughter[10]) when placed in his sole care.

---

[8] At the hearing, Perez's counsel pointed to the fact that Perez was allegedly relying on the presence of other adults, security personnel, and security cameras to provide him comfort as to his daughter's safety, but notably, it does not appear that Perez advised anyone—other than possibly the minor victim in this case—that he would be drinking to excess and needed someone else to supervise his child. *See* ECF 105 at 74:21-75:9. This is despite the fact that apparently, several members of his extended family were also on the cruise. *See* ECF 105 at 48:18-50:2, 66:11-12. This is also despite the fact that, as he testified, his daughter "likes to throw herself into bodies of water" which causes him "sheer fear." *See* ECF 105 at 70:2-6. The Court therefore finds that the drinking under these circumstances demonstrates a substantial risk.

[9] At trial, he testified that he had previously worked as an "AB109 probation officer" handling "post-release community supervision." *See* ECF No. 62:13-16. "Post-release community supervision" is the California state equivalent of federal supervised release: "AB109" refers to California Assembly Bill No. 109 which included the Postrelease Community Supervision Act of 2011, codified at California Penal Code §3451, and requires "community supervision" after release from prison after serving a term for a felony offense.

[10] The Court notes that *Wolf Child* does not address whether the right to contact with one's own children has the same contours as the right to contact with a step-child. This is yet another basis upon which *Wolf Child* can be distinguished—Perez is seeking unsupervised contact with a teenager close in age to the victims who is not his daughter. (At trial, Perez explained that his wife gave birth to his step-daughter while he and his wife were separated for a number of years, but he has raised her since she was three years old. It does not appear that he is legally her father by adoption.) At the hearing in this matter, counsel asserted that in many areas of the law, step-children have the same rights as biological children, and Perez's step-daughter is virtually indistinguishable from his daughter in terms of the nature of the familial relationship. Even if the same standard applies, the Court finds that the risk posed justifies the condition applying to both children. And nothing in *Wolf Child* suggests that the inquiry is child by child as opposed to individualized to the defendant and his children (rather than all sex offenders).

### C. The Limited Intrusion on Perez's Right to Familial Association is Not Substantively Unreasonable.

Perez argues that the condition is substantively unreasonable because the record is devoid of evidence that he is a danger to his children. For the reasons stated above, the Court finds ample evidence in the record of that danger. In *Wolf Child*, the Ninth Circuit was particularly troubled by the district court's generalizations, conclusory assertions of risk, and mischaracterization of the evidence (for example, that the defendant allegedly had a long history of contributing to the delinquency of minors, which the Ninth Circuit found to be unsupported). *Id.* at 1094, 1097. No such concerns are present here given the record the Court outlined above.

Furthermore, the Court has narrowly tailored its restrictions on Perez to the danger found to advance the goal of assuring the safety of "any other person," including his daughter and step-daughter. As stated above, the Court finds only that there is a danger to Perez's daughter and step-daughter when they are in his *sole* care. For that reason, the Court has permitted Perez to have virtually unlimited access to his daughter and step-daughter when his wife (and their mother) is present. This is a far cry from *Wolf Child* where the supervised release condition was that the defendant not have any access to his children.[11] Perez can hardly argue that his right to familial association is significantly infringed by a requirement—not that he not spend time with them, and not that his time with them by supervised by a stranger—that he spend time with them only in the presence of his wife and their mother.

### D. The Court is Not Required to Consider the Alleged Hardship to Perez's Wife

Perez makes much of the hardship that this condition has caused to his family and his wife. Motion at 7-9. But he does not point to anything in *Wolf Child* or any other case law that this should be a consideration, particularly given the Court's individualized findings with respect to the risk Perez poses to his daughter and step-daughter. Furthermore, the hardship his wife is experiencing is

---

[11] Although the condition in *Wolf Child* technically stated that Probation could authorize exceptions to the ban, the court disregarded this provision, finding that it "does not change the threshold analysis of whether the liberty interest being protected is a particularly significant one or whether there is justification in the record for infringing upon the defendant's particularly significant liberty interest in familial association." *Wolf Child*, 699 F.3d at 1095.

no greater than what she would endure were Perez to be incarcerated—which is a permissible sentence for his crime.[12] In addition, Perez has failed to show that the hardship—namely the possible loss of her employment due to excessive absences—is solely due to the bond condition as opposed to her other obligations such as her degree program. And in light of the testimony at trial about Perez's positive relationship with his family and defense counsel's explanation at the hearing that his children are cared for by their grandparents in Perez's absence, it is not clear to this Court that Perez's wife indeed has no assistance with child care for either child as was suggested by the briefing and her declaration. *See, e.g.*, Reply at 9 n.5 ("[T]here is no other third party available to assist with the care of the children."). Finally, the existence of the hardship may actually weigh in favor of the conditions as it may cause her to overlook any perceived risk to her daughters.[13]

### V. Conclusion

This Court's determination is that the restrictions placed on Perez are justified by the risk to his daughters as demonstrated by the evidence in the record. The Court finds that the record before the Court demonstrates the need for a limited intrusion as it demonstrates that Perez may be capable of abusing his own children or exposing his own children to abuse. Because of that risk, these conditions are necessary to accomplish the goals his pre-sentencing release. Whereas in *Wolf Child*, the district court had cut off all contact with the defendant's children, here, the Court has balanced the risk it has identified against Perez's limited rights and fashioned a set of conditions that appropriately protect his rights and involve no greater deprivation of Perez's liberty or his right to familial association than is reasonably necessary to accomplish the goals of protection of the public.

Perez has shown justification for the addition of the mental health condition, which is unopposed. The Court therefore GRANTS the request to add the mental health condition.

///

---

[12] The Court also notes that even at sentencing, the Court is not required to consider hardship to Perez's wife. *See* 18 U.S.C. § 3553(a) (outlining the factors to be considered in imposing sentence).

[13] Although Perez's counsel stated at the hearing that the Pretrial Officer supported the modification, the Pretrial Officer did not seek to be heard and the record only supports a determination that the Pretrial Officer "does not oppose" the modification. ECF 123-1 at ¶ 17.

For the reasons stated herein, the Court ORDERS as follows:

1. Perez's Motion is GRANTED in part;
2. Perez's bond conditions shall be modified to add the following condition:

    *Submit to a mental health evaluation. If directed to do so, participate in mental health counseling and/or treatment approved by Supervising Agency. You must pay all or part of the costs based on your ability to pay as determined by Supervising Agency.*
3. All other conditions of release remain the same.

IT IS SO ORDERED.

Dated: January 4, 2024

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

11